## THE STATE v. HAROLD HALL, Appellant.

Division Two, January 6, 1926.

1. **SEARCH AND SEIZURE: Without Warrant: Felony: Automobile: In View of Officer.** A sheriff, having well-founded and reasonable belief that defendant was in the act of committing the felony of unlawfully transporting intoxicating liquor, and who having arrived at the scene of the offense saw in plain view in defendant's automobile two one-gallon jugs containing corn whiskey, had authority to arrest defendant, who was also in the automobile, and seize the contraband, without a warrant; and in such case, whether the previously issued search warrant was valid is not material.

   *Held*, by WHITE, J., concurring, that the distinction between a felony and a misdemeanor must be kept in view; the unlawful transportation of intoxicating liquor being by statute a felony, and the sheriff, having information and reason to believe the defendant was committing a felony, had authority to arrest him without a warrant, and the search was merely incidental to a lawful arrest; but an officer cannot, without a warrant, lawfully arrest for a misdemeanor unless it is committed in his presence and within his view.

2. ————: **Automobile: Relaxation of Rule.** The search of an automobile and the seizure of contraband articles being carried therein, without a warrant, especially where the unlawful offense being committed is a felony and the officer has obtained information which forms a well-grounded basis for a belief that such felony is being committed, are reasonable and do not violate the constitutional provisions against unreasonable searches and seizures, because the delay incident to the obtaining of a warrant would give time to the rapidly moving motor vehicle to be beyond the reach of officers or to dispose of the contraband.

3. ————: **Statute: Without Warrant.** The statute (Sec. 25, Laws 1923, p. 245), declaring that "nothing herein shall be so construed as to prevent any officer whose duty it is to make arrests from arresting, with or without a warrant, any person found violating the provisions of this act, or any of the provisions of Article 7, Chapter 52, Revised Statutes 1919, or acts amendatory thereof, or from seizing, holding or destroying, . . . any of the intoxicating liquor so found, . . . but such officers are hereby authorized and directed to arrest, with or without a warrant, any person found violating any of such provisions," etc., confers comprehensive powers upon

officers to arrest violators of the law and search and seize, not only contraband articles, but utensils, instrumentalities or equipment used in the manufacture of same.

*Held.* by WHITE, J., concurring, that the Act of 1923 does not authorize a search without a warrant where it was not authorized before its enactment. The provision of its Section 25, which says that an officer, without obtaining a search warrant, may seize certain equipment used, or useful, in the manufacture of intoxicating liquor, "which he may find in use" for such purpose, cannot be construed to permit him to *find* such articles by a search without a search warrant, but if he finds them without an unreasonable search he may seize them. The act did not destroy the distinction previously existing between the right of an officer to make an arrest without a warrant where a felony has been committed and the inhibition upon his authority to make an arrest without a warrant for a misdemeanor which was not committed in his presence and view.

4. SEARCH WARRANT: Validity and Sufficiency. The search warrant in this case complied with all the constitutional and statutory requirements, and was valid in every respect. The petition on which it was based properly verified and substantially set forth the facts on which it was based; it described the place, namely, a designated place in a public highway, and the thing, namely, an automobile, to be searched; and it was filed before a justice of the peace, who embodied its averments in the warrant issued by him and directed to the officer.

5. ———: Automobile: Designation by Name. The designation of the automobile to be searched as a "Chevrolet," in the petition and search warrant, is surplusage, and therefore immaterial whether correct or incorrect.

6. ———: Incorporation of Arrest Warrant. The incorporation of an order for the arrest of defendant in the search warrant does not affect its validity, although a separate warrant of arrest may be issued.

7. ———: Probable Cause: Hearing: Statute: Necessary Showing. Probable cause consists in a belief in the charge or facts alleged, based on sufficient circumstances reasonably to induce such belief in a person of ordinary prudence in the same situation; and the existence of probable cause for the issuance of a search warrant is under the statute (Sec. 25, p. 244, Laws 1923) to be determined by the justice of the peace from the facts set forth in the petition therefor or from evidence heard thereon, and the petition being ample in its averments a resort to a hearing is not required. The Legislature may declare what showing shall constitute probable cause,

State v. Hall.

provided the petition for the warrant does not require less to be shown than was required at common law for the issuance of such a warrant; and the statute, while conforming to the requirements of the Constitution (Sec. 11, Art. II), requires a more specific and definite showing than was held to be sufficient at common law, but it only requires the judge issuing the warrant to be satisfied that the facts presented show the existence of probable cause.

8. **INTOXICATING LIQUOR: Transportation: Proof: Effect of Admission.** Defendant's admission in his testimony at the trial that he transported in his automobile the intoxicating liquor found, in one-gallon bottles in his possession, by the sheriff at the time of his arrest, is in the nature of a judicial admission, and being against interest will be presumed to be true, and is sufficient proof of the transportation, although the State by its evidence may have failed to prove the transportation.

9. ———: **Information: Amendment after Change of Venue.** The filing of an amended information after a special judge was called in to try the case, in which was incorporated the exact charge contained in the original, which charged defendant with the transportation of intoxicating liquor, to-wit, hootch, moonshine and corn whiskey, and to which was also added another count charging him with the possession of intoxicating liquor, did not prejudice his rights, was not a departure, did not create a new case, did not require different proof, but the added count pertained to the same subject-matter, and was an amendment in defendant's favor, because it authorized the jury to convict him of a less offense (a misdemeanor) than did the original (which charged him with a felony only).

10. **APPEAL: In Criminal Case: Abstract: Transcript.** Appeals in criminal cases can be perfected only by the filing in this court of a complete transcript in the manner prescribed by Sections 4102 and 4103, Revised Statutes 1919; and Section 4102 applies only to appeals in capital cases in which the death penalty is assessed. There is no authority for the filing in a criminal case of what is designated as "Abstract of the Record" or a "Short Form of Transcript."

Arrest, 5 C. J., Section 28, p. 398, n. 68; Section 31, p. 401, n. 89; Section 74, p. 434, n. 84, 88, 89. Criminal Law, 16 C. J., Section 1248, p. 629, n. 27, 28; Section 2595, p. 1108, n. 35; 17 C. J., Section 3440, p. 157, n. 2; p. 158, n. 7; Section 3625, p. 287, n. 52. Indictment and Information, 31 C. J., Section 424, p. 827, n. 98; Section 431, p. 829, n. 49. Intoxicating Liquors, 33 C. J., Section 375, p. 678, n. 37; Section 378, p. 681, n. 81; Section 381, p. 682, n. 4 New: Section 503, p. 759, n. 98. Searches and Seizures, 35 Cyc., p. 1266, n. 13; p. 1267, n. 21 New.

Appeal from Cass Circuit Court.—*Hon. Berry G. Thurman*, Special Judge.

AFFIRMED.

*W. D. Summers* and *W. M. Anderson* for appellant.

(1) The court erred in not sustaining defendant's motion to quash the illegal search warrant and suppress the evidence obtained thereunder. State v. Rebasti, 267 S. W. 861; State v. Hall, 265 S. W. 843; State v. Owens, 302 Mo. 348; State v. Lock, 302 Mo. 400; State v. Tunnell, 302 Mo. 433; State v. Smith, 262 S. W. 65. (2) The court erred in not sustaining defendant's motion to quash the new information filed after the change of venue and just before the special judge called in to try the case called said case for trial. (a) Because the change of venue was taken in a case charging defendant with transporting intoxicating liquors (a felony). (b) And the new information charged the same crime in one count and possessing intoxicating liquor (a misdemeanor) in the other count. (c) Which first count charged a new offense not pending against him before the change of venue, and the same was not an amendment. (d) Thus charging a new crime, which could not be done on change of venue. (e) The judge called in was called to try the case then pending and no other. State v. Billings, 140 Mo. 193. (3) The court should have granted a continuance, for the record shows that a new information was filed after the special judge took the bench and called the case for trial and defendant alleged surprise and that he was not prepared to defend against said new charge. (4) The defendant renewed his objection to the introduction of the evidence obtained by the illegal search warrant at the beginning of the trial and at every step taken in the case and having wrongfully refused to quash such evidence the court erred in not sustaining defendant's objection to same and also erred in not instructing the jury to disregard same at close of the case. Cases under Proposition 1. (5) The court erred in not sustaining defendant's demurrer at close of State's case, especially as to the charge of transporting, for there had been no evidence of transporting offered up to that time. All the evidence up to that time was that defendant was

seated in a Ford car at the side of the road and that the
officers passed him and came back and he was still there.
(6) The court should have sustained the demurrer to
the evidence at the close of the evidence for there was
no evidence of transporting of intoxicating liquors. (7)
The jury convicted the defendant on inference and not
on any proven fact of transportation. State v. Billings,
140 Mo. 193; State v. Patterson, 73 Mo. 695; State v.
Goddard, 162 Mo. 198. (8) The verdict is excessive,
and the court should have set it aside, as it, on its face,
shows prejudice and passion of the jury.

*Robert W. Otto*, Attorney-General, and *James A.
Potter*, Special Assistant Attorney-General, for respond-
ent.

(1) No search warrant was necessary at the time
the officers took the corn whiskey from the defendant's
automobile. (a) The testimony of the officers shows that
the glass bottles containing the liquor which was seized
by.them were unconcealed and open to plain view from
their car, and that they saw the bottles prior to the time
they seized them and prior to the time they placed de-
fendant under arrest. Ferrell v. Commonwealth, 264 S.
W. 1078; Vachina v. United States, 283 Fed. 35; Fletcher
v. Commonwealth, 245 S. W. 134; Royce v. Common-
wealth, 239 S. W. 795; State v. Mullen, 207 Pac. 634. (b)
The application for a search warrant filed by the prose-
cuting attorney states that he had been informed by a
citizen that such citizen had made arrangement with the
defendant to purchase some liquor from the defendant
at the time and place where the defendant was arrested.
Such information was in and of itself sufficient to con-
stitute reasonable cause on the part of the officers to be-
lieve that the automobile found in possession of defend-
ant contained contraband liquor and therefore no search
warrant was necessary. Elrod v. Moss, 278 Fed. 123;
State v. Spaugh, 200 Mo. 571; State v. Underwood, 75
Mo. 230; State v. Evans, 161 Mo. 95; State v. McNally,

87 Mo. 644; State v. Grant, 79 Mo. 113. (c) If under any possible theory of the law a search warrant was necessary under the facts in this case the application of the prosecuting attorney for the search warrant and the search warrant itself were entirely sufficient, the variance alleged by the defendant in the name of the car being immaterial and unimportant. State v. Perry, 267 S. W. 828; State v. Hesse, 191 N. W. 267; United States v. Borkowski, 268 Fed. 410; United States v. Rykowski, 267 Fed. 866. (2) The court committed no error in permitting the prosecuting attorney to file an amended information after change of venue was granted. The change of venue was taken from the judge and not from the county. Secs. 3762, 3853, R. S. 1919. (3) The court's failure to sustain defendant's demurrer at the close of the State's case for the reason that the evidence at that time did not prove felonious transportation was waived by the defendant when he introduced testimony in his own behalf, and since his testimony showed that he did transport the liquid contained in the bottles offered in evidence, he supplied the testimony which the State failed to produce in presenting the State's case, and the appellant is now in no position to complain. State v. Starling, 207 S. W. 767; State v. Jackson, 222 S. W. 746; State v. Meagher, 49 Mo. App. 571.

WALKER, P. J.—The appellant was charged in one count by information in the Circuit Court of Cass County with the felonious transportation of intoxicating liquor, to-wit, hootch, moonshine and corn whiskey; and in another with the unlawful possession of intoxicating liquor. Upon a trial to a jury before a judge of another circuit called in to try the case, the regular judge having been disqualified by the appellant, he was, in July, 1924, convicted on the count for transportation, and sentenced to four years' imprisonment in the penitentiary. From this judgment he appeals.

A deputy sheriff of Cass County, the night marshal of Pleasant Hill and two others, at about five o'clock on

the afternoon of July 19, 1924, at a point on the Harrisonville-East Lynne road near the Harrisonville cemetery, about one and one-fourth miles from Harrisonville, saw the appellant sitting in an automobile on the side of the road with two glass one-gallon bottles or jars in the car between the front and back seats. The officers had received information that the appellant would deliver intoxicating liquor to one Severs at that point. The appellant was arrested and taken with the bottles or jars and their contents before a justice of the peace, a complaint was filed by the prosecuting attorney charging him with the transportation of the intoxicating liquors specifically named, and he was required to give bond for his appearance in answer to said charge. While at the justice's office and in custody of the officers, he asked and was given permission to talk to his wife. In this conversation he told her that "he had been caught with the goods on him, and that he wanted her to come up and see if he could get bond." An examination of the contents of the bottles found unconcealed in appellant's car showed that the liquor contained therein was corn whiskey. These bottles and their contents were kept in a vault by the prosecuting attorney from the time they were taken to the justice's office until the trial, when they were introduced and examined by the jury.

Prior to the arrest of the appellant the prosecuting attorney had filed a sworn petition with a justice of the peace of the township for the issuance of a search warrant to the sheriff of the county, commanding him to apprehend said Harold Hall (appellant), and by force if necessary to search and seize a certain Chevrolet touring automobile, owned and operated by said Harold Hall, in which it was alleged that intoxicating liquors, to-wit, hootch, moonshine and corn whiskey, were, by said Harold Hall, being transported for the purpose of making an unlawful sale of same to one Severs, said sale to be made on the Harrisonville-East Lynne road, near the Harrisonville cemetery in Cass County, on the 19th day of July, 1924, at about five o'clock, P. M., of that day. That af-

fiant is informed that said Severs has made arrangements with the appellant to deliver the said intoxicating liquors to him as aforesaid and that the said liquors were being unlawfully transported and sold by said Harold Hall. Under the warrant thus issued in conformity to the allegations of the petition the sheriff arrested the appellant and seized the bottles of liquor.

The appellant and a witness, who testified in his behalf, stated that the bottles taken from appellant by the sheriff did not contain intoxicating liquor, but water drawn from appellant's well, and that he took it to the place where he was arrested to sell it to Severs under the pretense that it was corn whiskey, as he had been warned that Severs was acting as a "stool pigeon" in the detection and prosecution of crimes against the prohibition statute. Appellant also denied having any telephone conversation with his wife in the presence and hearing of the officers in which he admitted his guilt. The principal contention of the appellant is that the seizure of the liquor in his car was illegal because the officers did not have a valid warrant authorizing the search of the automobile. A motion was filed and overruled prior to the trial to quash the warrant and to suppress the evidence introduced in support thereof. The defects in the warrant are alleged to consist in a failure to properly designate the car to be searched as a Chevrolet when the fact disclosed that it was a Ford; and that the application for the warrant was made upon the information and belief of the prosecuting attorney and not upon his personal knowledge.

I. The validity of the search warrant is assailed. Under the facts a review of this contention is not necessary to a proper disposition of this case. The application for and procurement of the warrant was an act of supererogation on the part of the prosecuting attorney. The warrant clothed the sheriff with no greater power, in the performance of his duty in the enforcement of the law, than he possessed without it, except to apprise him that the appel-

Search and Seizure.

lant would be at the place designated, in the commission of a felony. Upon his arrival there, if the performance of his duty had required him to act under the authority conferred by the warrant, it was unnecessary to invoke it, because the liquor described in the warrant and which would have been the subject of his search under a warrant was in plain view, and he had, as the books put it, not only "reasonable cause to suspect" but visual evidence to sustain the conclusion that a felony was being committed which authorized the appellant's arrest and the seizure of the liquor without a warrant. The rule sustaining this conclusion is well established in the criminal law in defining the authority of officers in making arrests, and has frequently been affirmatively recognized by this court. In State v. Underwood, 75 Mo. l. c. 237, we cited with approval the rule as applied by SHAW, C. J., in Comm. v. Carey, 12 Cush. (Mass.) 246, as follows: "If a constable or other peace officer arrest a person without warrant he is not bound to show in his justification a felony actually committed, to render the arrest lawful; but if he suspects one on his own knowledge of facts, or on facts communicated to him by others, and thereupon he has reasonable ground to believe that the accused has been guilty of a felony, the arrest is not unlawful." In State v. Spaugh, 200 Mo. l. c. 596, we reaffirmed this rule; and later in State v. Whitley, 183 S. W. (Mo.) l. c. 320, FARIS, J., in discussing this question, reviews and cites with care the authorities on this subject and says: "We conclude, then, that a police officer may make an arrest without a warrant whenever he has a well-founded and reasonable belief, based upon the facts and circumstances presently existing, that a felony is being committed, even though such belief may afterwards turn out to be groundless." The arrest being lawful and the liquor, which constituted the *corpus delicti*, being within the view of the officer, eliminates from consideration any question as to the illegality of the search warrant as a basis for the suppression of the evidence. If convincing reasons for the correctness of this rule are

not apparent from the statement of the facts, like determinations by courts of last resort elsewhere will be found to sustain it.

In a recent decision by the Supreme Court of South Carolina, State v. Quinn, 111 S. C. 174, 97 S. E. 62, it is held that the constitutional provision against unlawful searches and seizures does not prohibit a seizure without a warrant, where there is no need of search, and the contrabrand subject-matter is open to the eye and the hand. This case relied for its immediate authority upon State v. Byrd, 72 S. C. 109, 51 S. E. 542, in which it was held that the constitutional limit had not been invaded when an officer arrests without warrant, one whom he discovers in the act of violating the law.

In State v. Miller, 121 Wash. 153, 209 Pac. 9, the defendant sought by motion to have liquor seized returned to him.  The motion was overruled; the court holding that where the officer saw the liquor in the auto truck on the highway, his seizure of same did not constitute a trespass and that his act was not in violation of the provision against searches and seizures.

In United States v. Batemann, 278 Fed. 231, where rum runners were conducting an illicit trade in liquor between Mexico and California, an officer, without a warrant, searched an automobile used in the business, and arrested the driver and seized the liquor, in the search of the automobile and seizure of the liquor, the court held that the acts of the officer were authorized because he had information that the defendant was transporting liquor.  Of like tenor are the rulings in State v. Fenton, 268 Fed. 221; Elrod v. Moss, C. C. A., 278 Fed. 123; O'Connor v. United States, 281 Fed. 396, and Lambert v. United States, 282 Fed. 413.

An exhaustive opinion on searches and seizure, as applied to automobiles, has recently been rendered by the Federal Supreme Court in Carroll v. United States, 267 U. S. 132, 69 Law Ed. 543.  Seven of the justices concurred in this opinion, McReynolds and Sutherland, JJ., dissenting.  Chief Justice Taft, speaking for the

court, after reviewing the statutes and distinguishing the numerous rulings of the Supreme Court and other tribunals on this subject, held that search and seizure, without a warrant, of an automobile engaged in the illegal transportation of intoxicating liquor is not a violation of the Fourth Amendment to the Federal Constitution, provided such search and seizure are made upon probable cause, that is upon a belief reasonably arising out of circumstances known to the officer, that an automobile or other vehicle contains contrabrand goods, which, by law, are subject to search and seizure. That the Fourth Amendment of the Constitution is to be construed in the light of what was deemed to be an unreasonable search and seizure when it was adopted, and in a manner that will conserve public interests as well as individual rights. Commenting upon the distinctive difference between a search and seizure in the case under review and others, the court says at page 551: "That the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and search of a ship, motor boat, wagon, or automobile for contrabrand goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

Our own court, speaking through WHITE, J., in State v. Owens, 302 Mo. l. c. 365, in reviewing the automobile cases on searches and seizures to demonstrate the rulings therein as inapplicable in the Owens case, says, in passing, that the search of automobiles without a warrant is held reasonable because the delay incident to the obtaining of a warrant therefor would give time to a rapidly moving vehicle to be beyond the reach of the officers or to have disbursed its load. While not decisive of any issue in the Owens case we cite it as showing

that the reason for the ruling stated by our learned associate was the same as that subsequently employed by the Chief Justice of the Supreme Court of the United States in the Carroll case.

We are aware of the limitation made in some of the cases decided in the state courts that an arrest without a warrant should, although not violative of the Constitution, have the sanction of a statute. The rule we have announced as approved by this court in the Underwood, Spaugh and Whitley cases, supra, does not require this limitation. However, in defining the powers of officers in the enforcement of the prohibition statutes our Legislature has rendered futile any objection that may be made to the application of the rule on account of an absence of an authoritative statute, by enacting one which by its terms confers comprehensive powers upon officers to arrest violators of the law and search and seize not only contrabrand liquors, but any utensils, instrumentalities or equipment used in the manufacture of same, in this language:

"That nothing herein shall be so construed as to prevent any officer whose duty it is to make arrests from arresting, with or without a warrant, any person or persons found violating any of the provisions of this act, or any of the provisions of Article 7, Chapter 52, Revised Statutes 1919, or acts amendatory thereof, or from seizing, holding or destroying, as the case may be, any of the intoxicating liquor so found, including any liquor in process of fermentation or distillation, or any of the equipment, articles or materials, being in use or fit for use, in the process of unlawfully manufacturing intoxicating liquor as herein specified; but it is hereby expressly made the duty of sheriffs and constables and their deputies within their respective counties, and of marshals, chiefs of police and policemen in cities, towns and villages, and of all other officials whose duty it is or shall be to make arrests, to diligently suppress any violation of this act or of Article 7, Chapter 52, Revised Statutes 1919, or acts amendatory thereof, and to this

end such officers are hereby authorized and directed to arrest, with or without a warrant, any person or persons found violating any of such provisions; and if arrested without a warrant, then such officer shall immediately report the same to the prosecuting attorney of the county, and file the necessary complaint thereon. It shall be equally the duty of any such officer to seize and hold without first obtaining a search warrant, any intoxicating liquor, still, doubler, worm, worm tub, mash, mash tub, fermenting tub, vessel, fixture or equipment, or any part or parts thereof, which he may find in use or fit for use in the unlawful manufacture of intoxicating liquor and to report the same immediately to the prosecuting attorney of the county in which such liquor, articles and equipment may be found." [Sec. 25, Laws 1923, pp. 245-246.]

II. Despite the seemingly sufficient reasons, buttressed by substantial authority, in support of the conclusion that the sheriff was well within his official province in making this arrest and seizure without a warrant, we have nevertheless examined the one issued herein to determine its validity. We have been thus impelled, not that it is deemed, under the record, essential to a determination of the matters at issue, but that casuistical objections to the requisites of such warrants may in the future be set at rest. The Federal (Amendment IV) and State (Sec. 11, Art. 2) constitutions define the requisites to the validity of a search warrant in requiring it to describe the place to be searched and the person or things to be seized. The statute (Sec. 25, p. 244, Laws 1923), after prescribing who may apply for the writ and designating the tribunals which may issue it, provides that the petition therefor, verified by the oath of the officer filing same, shall substantially set forth the facts upon which it is based, describe the place to be searched and the thing or things to be seized as nearly as may be. This having been

done, if it appears to the satisfaction of the court, a judge in vacation or a justice of the peace, before which or whom the petition is filed, that there is probable cause from the facts stated in the petition that the statute set forth in said Section 25, supra, is being violated, a warrant shall be issued which shall substantially recite the facts set forth in the petition. The record discloses that a petition by the prosecuting attorney, verified by his oath, averring the facts required by the Constitution, was filed with a justice of the peace, who issued a warrant thereon, which embodied the averments in the petition. In short, it was applied for and issued by the officers authorized by the statute, it designated the place where topographically and the thing physically was to be searched. The first was a point on the highway, named, and the second, an automobile. It was enough to meet the requirements of the Constitution and statute that the latter be described as such. Its designation as a ''Chevrolet'' car was surplusage, and it was immaterial, so far as the sufficiency of the writ was concerned, whether it was a Rolls Royce or a Ford, the antitheses of the manufacturer's art.

In designating the things to be seized the writ following the petition is particularly specific and the liquor is not only described in general terms but specifically in conformity with the statute and information. Nor is there any uncertainty in the averment by the prosecuting attorney of his knowledge of the facts on which he bases the petition. The statement of these essentials is incorporated in the warrant and is affirmatively made, leaving no room for controversy as to its meaning. The order for the arrest having been incorporated in the search warrant did not affect the validity of the instrument. In a very early case this course was approved. [Miller v. Brown, 3 Mo. 127, 23 Am. Dec. 693.] While a separate warrant of arrest in Boeger v. Langenberg, 97 Mo. 390, 10 Am. St. 322, was authorized, it was held that the insertion of an order therefor in the search warrant was a mere irregularity which did not affect the

legality of the process. Subsequent cases in this jurisdiction are silent on this subject. An examination of the search warrants under review in this court, and they have recently been numerous, shows that the course approved in Miller v. Brown, supra, has usually been followed.

III. It may not be amiss to discuss the question as to whether the justice of the peace had probable cause for the issuance of the warrant. Probable cause consists in a belief in the charge or facts alleged, based on sufficient circumstances reasonably to induce such belief in a person of ordinary prudence in the same situation. [State ex rel. Mann v. Trimble, 290 Mo. 661; Boeger v. Langenberg, 97 Mo. 390.] The existence of probable cause for the issuance of the warrant was under the statute (Sec. 25, p. 244, Laws 1923), to be determined by the justice of the peace from the facts set forth in the petition or from evidence heard thereon; the petition being ample in its averments in this respect, a resort to a hearing was not required to sustain the legality of the justice's action. Under the constitutional provision against unreasonable searches and seizures forbidding the issuance of a search warrant except upon probable cause the Legislature may declare what showing shall constitute probable cause for the issuance of the warrant, provided the petition therefor does not require less to be shown than was required for the issuance of such a warrant at common law. [State v. Kees, 114 S. E. (W. Va.) 617, 27 A. L. R. 681.] The Kees case, declaratory of the foregoing rule, is in line with numerous other authorities on this subject. [Comm. v. Certain Lottery Tickets, 5 Cush. 369; Dupree v. State, 102 Tex. 455, 119 S. W. 301; Rose v. State, 171 Ind. 662, 17 Ann. Cas. 228; Lowrey v. Gridley, 30 Conn. 450; State v. Nowlan, 64 Me. 531; Lincoln v. Smith, 27 Vt. 328; State v. Davie, 62 Wis. 305, 22 N. W. 411.] The requirements of an application for a search warrant, at common law, were that the affiant had probable cause to

*Probable Cause.*

suspect and did suspect that an offense was being committed at a particular place or on designated premises under the control of the party or parties named and show his reasons for the suspicion. [2 Hale's P. C. (1 Am. Ed.) p. 149r et seq; Davis, Cr. Justice, 60.] Our statute conforming to the requirements of the State Constitution requires a more specific and definite application for the warrant than was held to be sufficient at the common law. These requirements, which have been stated, were fully complied with in the application for the warrant and the latter embodied the affirmative averments contained in the former. The matters of fact constituting the reasons for the issuance of the writ appearing on the face of the application it was only necessary for the justice to determine, as a matter of law, whether these facts as stated constituted such probable cause as to authorize the issuance of the warrant. Acting judicially, as the justice was authorized to do, he determined from the statement of the facts that such probable cause existed and issued the warrant. In thus acting he was within the purview of the statute (Sec. 25) which confers this power upon him when satisfied as to the facts set forth in the application and in conformity with the rule, generally recognized, that the question of probable cause is always to be determined by the court from the facts in each particular case. [Miller v. Brown, 3 Mo. 127; 24 R. C. L. sec. 9, p. 707 and notes; Matson v. Michael, 81 Kan. 360 as annotated, L. R. A. 1915D, p. 5, note III, general rule; Simmons v. Gardner, 46 Wash. 282, as annotated, L. R. A. 1915D, p. 16, note 2, p. 43, as to a question of law and fact.]

IV. The court's refusal to sustain appellant's demurrer to the evidence on the ground that there was no proof of transportation is assigned as error. Appellant admitted in his testimony at the trial that he transported the liquid, found in the bottles by the sheriff, from his home to the place where he was found in possession of

**Transportation:**
**Proof: Admission.**

it when he was arrested, but contends that the liquid in the bottles was water. Of this more later. Appellant's testimony concerning the transportation was in the nature of a judicial admission and being against his interest will be presumed to be true. This rule obtains, although the State may in its testimony have failed to prove the transportation. [State v. Miller, 264 Mo. 441; State v. Wisdom, 119 Mo. l. c. 551; State v. Brooks, 99 Mo. 137.]

Further as to matters of evidence. The appellant's attempt to rebut the proof of his guilt is not by an unqualified denial, but by a statement that the bottles seized contained water and not whiskey; that he had taken them to the point thus filled where they were seen and seized by the sheriff to "make a fool" of Severs, who had contracted with him for the purchase of whiskey but who, appellant had discovered, was a "stool pigeon" of the prohibition enforcement officers. When or in what manner the contents of the bottles were changed is left to conjecture. None of these circumstances are indicative of its reasonable probability. Possibly, and without intended irreverence, the appellant may have had in mind that beautiful legend of the transformation of water into wine at the marriage feast at Cana, where the poet tells us "the modest water saw its God and blushed." Moved by a remembrance of this incident and flouting the idea that the day of miracles is past, especially when the performer is caught in a corner, the appellant sought to have the jury believe that when the sheriff looked upon the bottles, in response to his dominating will, the contents which were aqueous became ardent or spirituous. The obdurate, matter of fact jurors, however, although they may not have known that the application of the laws of physics and chemistry were involved in the conversion of water with an adjunct into a spirituous liquor, did know that distillation was a necessary process in the making of hootch, moonshine and corn whiskey and that this could not be effected by the glance of a sheriff's eye, however penetrating. Hence

they did not give credence to either the plot, treatment, sequence or continuity of the appellant's story, but did believe the unadorned statement of the sheriff that the bottles, when seized, contained whiskey, that no opportunity was afforded for a change in the liquor and that it continued to be whiskey while in his possession and when submitted for examination at the trial. Thus much for a review of the probative force of the entire testimony.

V. It is contended that the filing of the amended information after the special judge had been called in to try the case constituted prejudicial error. The grounds urged in support of this contention are that the original information charged the appellant with a felony in the transportation of hootch, moonshine and corn whiskey, while the amended information, in addition to the charge of felonious transportation, contained a second count charging him with a misdemeanor or the possession of intoxicating liquor, and that in thus pleading, the original information was not amended but a new offense was charged, which was not permissible after a change of venue; that the special judge was only authorized to try the case on the original information. Judge THURMAN was called in to try the case under the authority of Sections 3991 and 3994, Revised Statutes 1919; by virtue of these statutes, Judge THURMAN, upon accepting the call of the regular judge, became invested with all of the power that had theretofore been possessed in this case by the latter. The extent and the limitations upon this power are not left to a logical conclusion, to be drawn from the object and purpose of the statutes authorizing the selection of the special judge, which is to facilitate the administration of justice, but has been expressly defined by Section 3993, Revised Statutes 1919. The portions of said section pertinent to the matter under consideration are as follows: The special judge shall hear and try the particular case and shall possess during such trial or

hearing and in relation thereto, all the powers, perform all of the duties and be subject to the same restrictions as the judge of said court, but shall have no power whatever in any other case than the one specified in the order of record.

Except in the manner of its application the appellant does not question the extent of the power of the special judge as above defined; but contends that the incorporation of a count charging the possession of intoxicating liquor as a misdemeanor with a count identical with the original information which charged the transportation of a particular kind of intoxicating liquor as a felony, created a new case, which the special judge was not authorized to try. The fault in this logic lies in the fact that the information, as amended, did not create a new case. The added count simply charged a less offense than that defined in the original information, which charged a felony, and permitted the jury, if they did not find the appellant guilty of the offense of transporting the particular character of intoxicating liquors named, to find him guilty, if the facts warranted, of a misdemeanor, in having in his possession intoxicating liquors generally. The subject matter, therefore, of each of the counts was the same; and except as to the difference between the proof of possession and that of transportation, the former being necessarily included in the latter, the same evidence was required to convict under each count. The necessary inclusion of possession in the act of transportation would, upon a conviction of the felony, effect an acquittal of the misdemeanor. However, an acquittal of the felony would not result in an acquittal of the misdemeanor as charged in the separate count, because possession of contrabrand liquor may exist and be shown independently of the act of transportation. The question then arises, whether the prosecuting attorney, in filing the amended information, defined a new charge or whether it constituted a part of the original charge and hence was permissible as an amendment. Generally the right to amend an information is as broad as the right

to amend pleadings in civil cases. [State v. Dixon, 253 S. W. (Mo.) 746.] The limitations upon this rule have been discarded in Section 3853, Revised Statutes 1919, which provides that: "any affidavit or information may be amended in matter of form or substance at any time by leave of court before the trial, and on the trial as to all matters of form and variance, at the discretion of the court, when the same can be done without prejudice to the substantial rights of the defendant, on the merits, and no amendment shall cause any delay of the trial, except at the instance of the defendant for good cause shown by affidavit."

As illustrative of the manner in which the power conferred on the prosecuting attorney has been judicially approved, note the case of State v. Sillbaugh, 250 Mo. 308, in which the defendant was charged with a misdemeanor and the information was permitted to be amended to charge a felony. In State v. Walton, 255 Mo. 232, the controlling limitation upon the right to amend an information under the statute was held to exist if it did not change the nature of the charge or the defense that may be interposed by the defendant. The test quoted by BROWN, J., in State v. Walton, supra, p. 232, and sustained by numerous authorities elsewhere is, if the defense, as it originally stood, would be equally available after the amendment is made and any evidence the defendant might have would be equally admissible under either form of the information the amendment is permissible. [Queen v. Weir, 3 Can. Cr. Cas. 262; Reg v. Sutton, 13 Cox Cr. Cas. 648; State v. Schaben, 69 Kan. 421; State v. Snow, 30 La. Ann. 401; United States v. Morrissey, 32 Fed. 147.]

The only change effected, therefore, by this amendment was to authorize the conviction of the appellant for a less offense than that originally charged. This change in its effect upon the appellant was in his favor, rather than to his prejudice. Furthermore, the right to the same character of testimony was admissible under one count as the other, saving, as we have stated, proof

of possession to establish the misdemeanor. There is, therefore, an absence of a showing that the appellant was prejudiced by the change, and we hold this contention to be without merit.

VI. The rule announced in State v. Billings, 140 Mo. l. c. 204, cited by appellant as definitive of what constitutes a new case, has, under its facts—with which we will not burden this opinion by repeating them—no reasonable relevancy to the matter at issue. There the point was, whether a defendant could apply for a change of venue from a second indictment for the same offense. The court ruled, and properly so, that so far as the defendant's rights in that respect were concerned they were the same as had existed under the original indictment. Here the contention is solely in regard to the nature of one of the counts of the information as creating a new case which we have held, for the reason stated, does not exist.

Billings Case.

VII. Among the matters urged by the appellant in his brief, but not saved in the progress of the trial or properly preserved in the motion for a new trial to authorize a review of same, we note the following: the argument of the prosecuting attorney and the criticism of the instructions given.

VIII. Other matters, the importance of which demands the attention of this court, are the manner in which this appeal was attempted to be perfected and the condition of the transcript of the record proper and the bill of exceptions. There is no authority for the filing in this court in a criminal case of what is designated as an "Abstract of the Record." Appeals in criminal cases are only authorized to be perfected by the filing of a full transcript in this court, as provided in Sections 4102 and 4103, Revised Statutes 1919. Section 4102 only applies to appeals in capital cases in which the death penalty is assessed (State v. Piersol, 210 S. W. (Mo.) 58; Ex parte

Dipley, 233 Mo. 235), and a comment on the amendment thereto (Laws 1925, p. 199) need not be discussed as authorizing, in the case at bar, an agreement as to what shall constitute the issues for consideration on appeal so far as concerns the evidence or oral proceedings.

Whether an appeal is sought to be perfected under either Section 4102 or Section 4103 a full transcript must be filed. [State v. Miller, 264 Mo. 441; State v. Sparks, 263 Mo. 609; State v. Connors, 258 Mo. 330; State v. Dolan, 216 S. W. (Mo. App.) 334; State v. Chilton, 199 Mo. App. 220.] In these cases it was attempted to perfect the appeals by a short form of transcript. The rule, however, is equally applicable in the absence of such a complete transcript as is contemplated by the statute. We have so frequently announced this rule requiring a full transcript in interpreting these sections that it would seem unnecessary to repeat it for the information of any intelligent lawyer or competent clerk.

There is no complete transcript here and we have been compelled, in order to review this case, to hunt with painstaking care through two illy assorted compilations of what purports to be the record proper and the bill of exceptions to ascertain what has been preserved in a manner to authorize our review. This we have done that the matters at issue, which constitute the technically vexing questions in many cases of this character, may be finally set at rest.

Finding no error authorizing a reversal the judgment of the trial court is affirmed. All concur.

WHITE, J. (concurring).—The sheriff in this case had a right to arrest the defendant with or without a warrant, because he had information and reason to believe the defendant was committing a felony. The search, if there was one, was incidental to that arrest. The search warrant added nothing to the sheriff's authority.

We should not overlook the difference between a felony and a misdemeanor. The Act of 1923 makes the manufacture, sale, or transportation of corn whiskey a

felony. Thus, it is much easier to detect and convict for certain violations of the prohibition law than it was before the passage of that act. An arrest by an officer, without a warrant, may be made if he has reason to believe a felony has been committed. While the officer cannot, without a warrant, arrest for a misdemeanor unless it is committed in his presence.

But the act does not authorize a search without a warrant where it was not authorized before. That provision in Section 25, page 246, which says an officer, without obtaining a search warrant, may seize certain equipment used, or useful, in the manufacture of intoxicating liquor, *"which he may find in use,"* for such purpose, cannot be interpreted to permit him to *find* such articles by a search without a search warrant. If he finds them without an unreasonable search he may seize them. The framers of the Constitution, no doubt, had in mind the annoying espionage of indiscreet officials when they require "probable cause" before the issuance of a search warrant.

I concur in the conclusion reached in this case because the search was incidental to a lawful arrest.