THE STATE v. GILBREATH, *Appellant.*

Division Two, November 19, 1895.

1. **Criminal Practice:** JURY: PUNISHMENT: INSTRUCTIONS. It is the duty of the jury to assess the punishment of defendant convicted of an offense, and it is error to instruct them that if they are unable to agree as to the punishment, they should so state in their verdict.

2. ———: BILL OF EXCEPTIONS: INSTRUCTIONS. Instructions not called for in the bill of exceptions, although copied therein by the clerk, do not constitute a part of the record, and will not be regarded on appeal.

3. ———: ERROR: PRESUMPTION. Error is presumptively harmful, and it devolves on him who asserts it to be harmless to so show.

*Appeal from Hickory Circuit Court.*—HON. ARGUS COX, Judge.

REVERSED AND REMANDED.

*Upton & Skinker* for appellant.

(1) Section 3480 does not make any carnal knowledge of a girl under fourteen years rape; the act is not rape, unless the girl is under twelve years of age; or, if the girl is over twelve and under fourteen, then the act must be committed by a married man. (2) If the construction put upon this section by the state is correct, then the infliction of the death penalty upon a youth who may be ensnared by an unchaste girl long past the age of puberty is a cruel and unusual punishment within the meaning of the constitution, and that part of the section is void. The court erred in instructing the jury that they might return a general verdict of guilty, without assessing the punishment, and in preparing and giving to the jury a form of verdict finding the defendant guilty, without assessing the punishment, before the jury had attempted to agree upon the punishment. Sec. 4230, R. S. 1889, does not authorize such a practice. The law imposes on the jury the duty of assessing the punishment. *Fooxe v. State,* 7 Mo. 502. (3) The record shows no arraignment.

*R. F. Walker,* attorney general, and *Morton Jourdan,* assistant attorney general, for the state.

(1) The evidence supports the verdict. *State v. Alfrey,* 124 Mo. 393; *State v. Richardson,* 117 Mo. 585; *State v. Moxley,* 115 Mo. 644; *State v. Sanford,* 124 Mo. 484; *State v. Banks,* 118 Mo. 107. (2) The instructions correctly declare the law. The second para-

graph of the fourth instruction is not error; it was authorized under R. S. 1889, sec. 4230. See *State v. Tull*, 119 Mo. 424; *State v. Foster*, 115 Mo. 541. (3) The record shows that defendant was arraigned. (4) The indictment is sufficient. *State v. Houx*, 109 Mo. 654; *State v. Burrus*, 29 S. W. Rep. 842.

GANTT, J.—At the May term, 1883, the grand jury of Camden county preferred the following indictment against the defendant:

"STATE OF MISSOURI,  }  In the circuit court for the
}  ss.   county of Camden, May
"County of Camden,  }     term, 1894.

"The grand jurors for the state of Missouri, duly impaneled, charged, and sworn to inquire within and for the body of the county of Camden, and true presentment make, upon their oaths present and charge that one Andrew Gilbreath, on the twenty-ninth day of May, in the year 1893, in the —— of ——, at the township of ——, in the county of Camden aforesaid, unlawfully and willfully, then and there did, in and upon one Neltha Coffey, a female child under the age of fourteen years, to wit, of the age of eleven years, unlawfully and feloniously, did make an assault, and her, the said Neltha Coffey, then and there unlawfully and feloniously did carnally know and abuse, against the peace and dignity of the state.

"W. T. S. AGEE,
"Prosecuting Attorney.

"A true bill.    W. H. DOWNING, Foreman."

He was duly arraigned, and a plea of not guilty entered. The cause was removed to Hickory county on his application for a change of venue. He was convicted at the November term, 1894, and was sentenced by the court to five years' imprisonment in the penitentiary.

The case depends almost entirely upon the evidence of the prosecutrix. The corroboration is exceedingly unsatisfactory. Neltha Coffey, the prosecutrix, lived with her parents on a farm in Camden county, not far from Mack's Creek. On the afternoon of the alleged rape her father was at work near the house, and her stepmother was in the yard. Neltha says she left the yard and started to gather some brush to make the fire for washing next day. She was eleven years and six months old at the time. No one sent her for the wood. Her story is that when she had reached a point about fifty yards from the house, and near a sycamore tree, that was shown to be from one hundred feet to sixty-three yards from the house, the defendant, who had hitched his horse to the tree, when she came to the brush pile seized her; that he then tied her hands behind her with a seagrass string, took an old ribbon from her hair and tied it around her neck, and then threw her down and raped her; that when he had consummated the offense he mounted his horse and rode off, gaily singing an obscene song, which she remembered so well that she repeated it *verbatim* to the jury.

The defendant was not yet grown.

The physician who examined her the next day, was introduced by the state and testified that there was no laceration of the parts. That the girl was abnormally developed. Her stepmother said she could discover nothing wrong, save she thought there was a slight enlargement of the parts. She says the offense was committed in a path that led from one settlement to another and about an hour before sundown on the twenty-ninth of May, 1893.

The court correctly defined the offense in its instructions, but, among others, gave the following instruction:

"4. Should you find the defendant guilty, you will assess his punishment at death, or imprisonment in the penitentiary for a term of not less than five years at your option.

"Should you find the defendant guilty, and be unable to agree as to the punishment that should be inflicted, you will so state in your verdict."

To which the defendant duly excepted at the time.

It appears also, from the bill of exceptions, that the court refused defendant's instruction on the credibility of witnesses, substantially such as has been approved by this court in many cases.

I. The court erred in giving instruction number 4. The law devolved upon the jury the duty of affixing the punishment of the defendant. The court invited the jury to disregard that portion of their duty by giving this instruction.

In *Fooxe v. State*, 7 Mo. 502, the jury, after having been out for some time, came into court and said they could not agree. Thereupon the court, at the instance of the circuit attorney, gave the following instruction: "The court instructs the jury that they have the right and authority to return a general verdict of guilty, without assessing any punishment." Upon appeal this court reversed the judgment saying: "This law imposes on the jury the duty of inflicting the punishment, nor has the court any right to fix the punishment, unless the jury disagree, or do not by their verdict inflict any punishment. But the court in this case told the jury in substance, that this was no part of their duty, and they had authority to bring in a general verdict. Whereas the power of the court is merely contingent, not primary, and only to be exercised where a failure of duty, or a disagreement on the part of the jury requires its exercise."

The statute remains to-day just as it did when this

court so construed it.   Successive legislatures for over a half century have been satisfied with the construction and we see no reason for departing from it.

II.   The court erred in refusing defendant's third instruction.   The clerk without authority of law has copied two instructions which, he says in a note to the record, were given by the court of its own motion. Instructions are no part of the record proper and the bill of exceptions not having called for these two instructions, they are improperly copied therein.   The clerks are only required by law to certify matters of record in their courts.   They are not expected to defend the trial courts.   The law presumes the trial judge is capable of determining what is a proper bill of exceptions.

Error is presumptively harmful and it devolves upon those asserting it to be harmless, to show it.   Considering the unsatisfactory evidence in this case, its extreme improbability and the great punishment attached to the offense, we are of the opinion that the errors noted were by no means harmless.   Judgment reversed and cause remanded.   BURGESS and SHERWOOD, JJ., concur.